# United States District Court
**WESTERN DISTRICT OF NEW YORK**

---

MAIKEL JOSE RAMON PEREZ,

*Petitioner*,

v.

PHILIP L. RHONEY, in his official capacity as Acting Deputy Field Officer Director; KRISTI NOEM, in her official capacity as Secretary of Homeland Security; TODD M. LYONS, in his official capacity as Acting Director of Immigration and Customs Enforcement; and PAMELA BONDI, in her official capacity as Attorney General of the United States

*Respondents.*

1:26-CV-305-BDP
DECISION & ORDER

---

Petitioner Maikel Jose Ramon Perez, a citizen of Venezuela, is currently detained by Immigration and Customs Enforcement ("ICE") in the Buffalo Federal Detention Facility ("BFDC") in Batavia, New York. He has been in prison for about a year and a half. The Government does not contend that he posed a risk of flight or a danger to the community. Pending before the Court are Perez's Petition for a Writ of Habeas Corpus and the Government's Motion to Dismiss the Petition. For the reasons set forth, the Court grants, in part and denies in part, Perez's Petition and orders that he be afforded a bond

hearing within 5 days of the date of this Order. The Court denies as moot the Government's Motion to Dismiss.

## BACKGROUND

### I. Factual Background

Perez is a former member of the Venezuelan military who fled Venezuela in June 2021 because he feared government actors would harm him because he engaged in political and anti-corruption activities. He entered the United States without inspection from Mexico on or about May 25, 2024. The following day, he was taken into custody by the Department of Homeland Security and eventually placed in ICE detention. On June 24, 2024, he was paroled into the United States for one year and informed that his parole would automatically terminate if he left the country.

On February 5, 2025, Perez entered Canada and sought asylum, but his application was denied by Canadian authorities. Perez was then returned to the United States and detained by DHS. On March 27, 2025, DHS issued Perez a Notice and Order of Expedited Removal and Determination of Inadmissibility. Then, on April 3, 2025, Perez was afforded a credible fear interview, which resulted in a positive fear determination. On April 21, 2025, DHS issued Perez a Notice to appear, which vacated his expedited removal order because of the credible fear determination. On June 24, 2025, Perez filed an application with U.S. Citizenship and Immigration Services requesting asylum,

withholding of removal, and protection pursuant to the Convention Against Torture ("CAT").

An immigration judge ("IJ") held a hearing on Perez's application on September 15, 2025. The IJ denied Perez's asylum application, but granted him Deferral of Removal pursuant to the CAT. Both parties appealed that decision to the Board of Immigration Appeals ("BIA"). On May 20, 2026, the BIA dismissed Perez's appeal and reversed the IJ's decision to grant Perez relief under the CAT. On the same day, Perez appealed the BIA's decision to the Second Circuit where that appeal remains pending.

## LEGAL STANDARD

### I. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b), a complaint—or, as here, a pleading that styles itself as a complaint and as a petition—may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *see Williams v. DHS/ICE/Immigr. Ct.*, 2023 WL 3585849, at *1 (W.D.N.Y. May 22, 2023). A complaint is properly dismissed for failure to state a claim under Rule 12(b)(6) if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## II. Section 2241 Petition

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. §§ 2241(a), (c)(3)). 28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). When a petitioner brings a habeas petition under section 2241, he "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Dzhabrailov v. Decker*, 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020) (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)).

## ANALYSIS

The parties disagree as to which statute applies to Perez's detention now that the BIA has ruled against him. As noted, Perez has filed a Petition for Review of the BIA's decision and a motion for a stay of removal, both of which are currently pending before the Second Circuit. As explained below, the Court finds that Perez is detained pursuant to 8 U.S.C. §1226 and that the Constitution requires that Respondents provide him with a bond hearing.

## I. Perez is detained pursuant to 8 U.S.C. §1226.

"The [G]overnment's power to detain an immigrant must be grounded in a specific provision of the INA." *Hechavarria v. Sessions*, 891 F.3d 49, 54 (2d Cir. 2018). Perez argues that he is detained pursuant to 8 U.S.C. §1226, which requires that, due to his prolonged detention, he be afforded a bond hearing in accordance with the Due Process Clause. The Government argues that Perez is detained pursuant to 8 U.S.C. §1231 or, alternatively, pursuant to 8 U.S.C. §1225(b), and is not afforded a bond hearing under either provision. Because the mandatory detention period in Section 1231 has not begun yet, the Court agrees with Perez.

Section 1231's mandatory detention period begins *on the latest* of the following: (i) The date of the order of removal becomes administratively final; (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement. 8 U.S.C. §1231(a)(1)(B). Accordingly, "if the removal period has begun, the noncitizen is detained under section 1231(a); if it has not yet begun, the noncitizen is detained under section 1226." *Agard v. Searls*, 2023 WL 6880474, at *3 (W.D.N.Y. Oct. 18, 2023) (citing *Hechavarria*, 891 F.3d at 54–55).

The Court concludes that Section 1231(a)(1)(B)(ii) controls because of the existence of a forbearance agreement between DHS and the Second Circuit. Under this agreement,

the Government has assured the Second Circuit that a noncitizen detainee who has a petition for review pending before the Circuit will not be removed. *In re Immigr. Petitions for Rev. Pending in U.S. Ct. of Appeals for the Second Cir.*, 702 F.3d 160, 162 (2d Cir. 2012). Perez's removal order is pending before the Second Circuit and he has moved for a stay of removal, but that motion has not been decided. However, because of the forbearance agreement, Perez will not be removed until the Second Circuit adjudicates his Petition for Review. Accordingly, Perez contends that the forbearance policy amounts to a court-ordered stay, such that §1231 is not yet triggered. The Government, on the other hand, maintains that the forbearance agreement does not amount to a stay as that term is used in Section 1231(a)(1)(B)(ii).

Like Chief Judge Wolford, this Court agrees "with the overwhelming majority of judges in this Circuit that have ruled the Second Circuit's forbearance policy amounts to a court-ordered stay, such that § 1231 is not yet triggered." *Ahmed v. Rhoney*, 2026 WL 262553, at *1 (W.D.N.Y. Feb. 2, 2026); *see also Rodriguez Sanchez v. Decker,* 431 F. Supp. 3d 310, 314 (S.D.N.Y. 2019) (same); *Villatoro v. Joyce*, 2024 WL 68533, at *3 (S.D.N.Y. Jan. 5, 2024) (same and collecting cases); *Singh v. Francis*, 2026 WL 507890, at *3 (E.D.N.Y. Feb. 24, 2026) (same); *but see, e.g.*, *Loachamin v. Kurzdorfer*, 792 F. Supp. 3d 353, 358–59 (W.D.N.Y. 2025). The Court concludes that the agreement functions as a stay within the meaning of Section 1231(a)(1)(B)(ii) because of Section 1231's assumption "that the immigrant's removal is both imminent and certain." *Hechavarria*, 891 F.3d at 55.

Accordingly, the "definition of removal period [contemplated by Section 1231] is dependent upon the assumption that no substantive impediments remain to the immigrant's removal." *Id.* But that is not the case here because of Perez's pending petition for review and his motion for a stay of removal. Thus, Perez is not detained pursuant to Section 1231. Instead, he is detained pursuant to Section 1226 because that provision "governs the detention of immigrants who are not immediately deportable." *Hechavarria*, 891 F.3d at 57. Perez is not immediately deportable because his deportation has been effectively stayed by the Government's forbearance agreement with the Second Circuit. Consequently, the Court must now determine whether Perez's detention under Section 1226 comports with the Due Process Clause.

**II. Perez's is entitled to a bond hearing.**

A basic principle of our constitutional structure is that the "Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see also Reno v. Flores*, 507 U.S. 292, 306 (1996) (Scalia, J.) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."). Perez argues that the Government has and continues to violate his due process rights because his detention has become unreasonably prolonged. The Court agrees with him.

In *Black v. Decker*, 103 F.4th 133, 140–41, 151 (2d Cir. 2024), the Second Circuit analyzed claims by noncitizens detained pursuant to Section 1226 under the factors set

forth by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine what process, if any, noncitizens were entitled to because of the length of their detention. Accordingly, the Court will analyze Perez's claims under the *Mathews* framework. As discussed below, the Court concludes that *Mathews* factors weigh in his favor.

The first *Matthews* factor is the private interest, which weighs heavily in Perez's favor. In this case, "the private interest affected by the official action is the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). This is especially true since Perez's immigration detention is not predicated on a criminal adjudication. *See Black*, 103 F.4th at 151. Instead, he received temporary protected status in the United States, left for Canada, was denied asylum in the Great White North, and was then returned to DHS and detained. "In this country liberty is the norm and detention is the carefully limited exception." *Velasco Lopez*, 978 F.3d at 851 (citation modified). Accordingly, the private interest factor weighs heavily in Perez's favor.

"The second *Mathews* factor is 'the risk of an erroneous deprivation of such [private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards.'" *Black*, 103 F.4th at 152 (quoting *Mathews*, 424 U.S. at 335). This factor also cuts in Perez's favor. Though the Court now holds that Perez is detained pursuant to Section 1226, the Government has operated under the assumption that he is detained under Section 1231 and has described the limited process

Perez is currently receiving. The Government states that he receives "periodic custody reviews from" DHS and when noncitizens, like Perez, remain in detention after the 90-day period provided for by Section 1231, DHS conducts further review three months after the initial 90-day review. This limited process is insufficient for a noncitizen imprisoned pursuant to Section 1226 and risks erroneously imprisoning a noncitizen for an unreasonably prolonged duration. In *Black*, the Second Circuit held that even noncitizens found guilty of crimes and then detained are entitled to bond hearings. Perez is on significantly surer footing because he is not in jail pursuant to a criminal conviction. 103 F.4th at 151. Further, the added safeguard of a bond hearing ensures that noncitizens receive the process to which they are entitled to under the Constitution. Thus, the Court finds that this factor also favors Perez.

"The third *Mathews* factor considers 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Black*, 103 F.4th at 153 (quoting *Mathews*, 424 U.S. at 335). This factor also weighs in Perez's favor. The administrative burden of a bond hearing is not onerous given that the hearing can occur in person or electronically. As to the Government's interest, it has essentially argued that it must be able to detain Perez indefinitely to effectuate the lawful administration of the immigration laws. The effective administration of the nation's immigration laws is an obviously important factor. However, providing Perez with a bond hearing at which an

immigration judge can determine whether he is a flight risk or a danger to the community or whether there are bail conditions that can be imposed, does not compromise the Government's ability properly to administer the immigration laws. At the same time, a bail hearing will afford incarcerated individuals an opportunity to obtain review as to whether their imprisonment is conterminous with the due process to which they are entitled.

Therefore, the Court finds that the *Mathews* factors weigh in Perez's favor. Further, Perez has now been detained for over 18 months and it is unclear when the Second Circuit will adjudicate his Petition for Review. The Court concludes that his detention by DHS has become unreasonably prolonged and due process requires that the Government provide him with a bond hearing.[1]

## CONCLUSION

It is therefore ORDERED that the Verified Petition for A Writ of Habeas Corpus (ECF No. 1) is hereby GRANTED in part and GRANTED in part in that Respondents are ORDERED to provide Perez with a bond hearing no later than five days from the date of this Order. At the hearing, the Government shall bear the burden to show, by clear and convincing evidence, that Perez is a flight risk or a danger to the community and that

---

[1] Alternatively, the Government argues that even if Perez is not detained pursuant to Section 1231, he is then subject to mandatory detention as provided in 8 U.S.C. 1225(b). This argument is unpersuasive as he would still be entitled to a bond hearing for the reasons articulated by Judge Newman in *Beshkani v. Ball*, 2026 WL 2408091, at *2–4 (W.D.N.Y. Aug. 18, 2026).

no alternative to detention could mitigate the risk of danger or flight. *See Black*, 103 F.4th at 155–59.

It is further ORDERED that Respondents' Motion to Dismiss the Petition for Writ of Habeas Corpus (ECF No. 11) is hereby DENIED as moot.

It is further ORDERED that Perez is awarded attorneys' fees and costs under the Equal Access to Justice Act.

It is further ORDERED that all other relief not expressly granted is hereby DENIED.

The Clerk of Court is respectfully directed to enter judgment consistent with this Order and to close the case.

**SO ORDERED.**

/s/ Barrington D. Parker
Hon. Barrington D. Parker Senior Circuit Judge of the U.S. Court of Appeals for the Second Circuit, sitting by designation

Dated: September 2, 2026